```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

THERESA A. MCDANIEL O/B/O X.A.,

                                       Plaintiff,      17-CV-1326

v.                                              DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.

## Introduction

Plaintiff, Theresa A. McDaniel, brought this action pursuant to Title II of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income on behalf of X.A., a child under the age of eighteen. ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 18, 25. For the reasons that follow, plaintiff's motion for judgment on the pleadings (ECF No. 18) is denied, and the Commissioner's motion (ECF No. 25) is granted.

## Background and Procedural History

On August 29, 2014, plaintiff filed an application for supplement security income on behalf of X.A. ("child" or "X.A." hereinafter), a child under the age of eighteen, alleging disability beginning on July 20, 2012. Administrative Record ("AR.") at 44-49. After the application was denied, she timely requested a hearing. AR. at 39-41. On February 22, 2017, plaintiff appeared with the child and her counsel, Lewis Schwartz, Esq., and testified at a hearing before Administrative Law Judge Hortensia Haaversen ("the ALJ"). AR. at 50-74. The ALJ issued an unfavorable decision on June 14, 2017. AR. at 13-35. Plaintiff then timely requested review by

1

the Appeals Council, which the Council denied on October 18, 2017, making the ALJ's decision the final decision of the Commissioner. AR. at 1-5. Plaintiff subsequently filed this lawsuit.

## Legal Standard

The scope of this Court's review of the ALJ's decision denying benefits to plaintiff is limited. It is not the function of the Court to determine *de novo* whether plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

Individuals under eighteen years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i).

In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. § 416.924. The first step requires the ALJ to determine

whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924(a). The second step requires the ALJ to determine whether the child has any severe impairments, defined as anything that causes "more than minimal functional limitations." *Id.* Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id.* If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is then considered disabled. 20 C.F.R. §§ 416.924(d)(1).

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six domains:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for yourself; and
6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and medically or functionally equals the listings, and the impairment meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## Discussion

I) <u>The ALJ's Decision</u>

At step one of the sequential analysis, the ALJ found that X.A. has not engaged in substantial gainful activity since the application date of August 29, 2014.[1] AR. at 19. At step two, the ALJ found that she suffered from two severe impairments: hearing loss requiring the use of bilateral hearing aids, and a learning disorder. *Id.* At step three, the ALJ determined that neither impairment was of a severity to meet or medically equal any listings. *Id.* at 20. The ALJ further determined that X.A. had "less than marked" limitation in all but one - the moving about and manipulating objects - functioning domains, which she determined the child had no limitation in. AR. at 25-31. Because the child's impairments did not result in either a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain, the ALJ concluded that X.A. was not disabled. *Id.*

II) <u>Analysis</u>

Plaintiff argues that the ALJ erred in evaluating the severity of the child's limitations in two domains - acquiring and using information, and attending and completing tasks – by rejecting an opinion of X.A.'s special education teacher, Katherine Finney ("Finney" hereinafter), and by failing to consider the effects of a structured environment X.A. was in when the ALJ determined the child's functioning in both domains. *See* Pl.'s Br. 9-13. (ECF No. 18). Plaintiff also argues that the ALJ erred in evaluating X.A.'s hearing impairment under Listing 102.10. *Id.* at 13-14.

---

[1] The ALJ's decision refers to July 7, 2014 as plaintiff's application date. AR. at 16, 19.

a)  <u>Acquiring and Using Information</u>

The regulations provide that the domain of acquiring and using information refers to how well a child acquires or learns information, and how well the child uses the information learned. 20 C.F.R. § 416.926a(g). A child of school-age[2] should be able to learn to read, write, do math, and discuss history and science. *Id.* (g)(2)(iv). The child should be able to use these skills in academic situations by reading about subjects, producing oral and written projects, solving mathematical problems alone or as part of group work, and use them in daily living situations at home or in the community when reading street signs, telling time, or making change. *Id.* The regulations provide that adolescents between the ages of twelve and eighteen – X.A.'s age range at the time the ALJ issued her decision – should continue to demonstrate what they have learned in academic assignments and in daily living situations, and apply these skills in practical ways to prepare themselves to enter the workforce after finishing school. 20 C.F.R. § 416.926a(g)(2)(v). Here, plaintiff argues that the ALJ erroneously assigned limited weight to the questionnaire submitted by Phinney, who opined that X.A. had serious problems functioning in this domain. Pl.'s Br. 9-12. This Court disagrees.

As a general matter, when evaluating a child's impairments, the ALJ must consider all evidence available in the record to make a disability determination for a child. 20 C.F.R. § 416.924a(a). Such evidence may be available from acceptable medical sources, such as the child's pediatrician, psychologist, or therapist, or from non-medical sources, such as the child's parents, teachers, siblings, and other caregivers who know and have contact with the child. *Id.*; *see also* SSR 09-2P, 2009 WL 396032, at *4 (Feb. 18, 2009). Notably, information from such non-medical

---

[2] Plaintiff was 10 years old at the time of her application, and was an adolescent at the time the ALJ issued her decision.

5

sources cannot establish the existence of a medically determinable impairment or disability, even though in some circumstances it may be relevant because of the special knowledge that the person providing it might have about the severity of the child's impairments and functioning. SSR 09-2P, at *4; *see also* SSR 06-3p, 2006 WL 2329939, at *4 (Aug. 9, 2006).

When assigning weight to the opinion of a non-medical source such as a teacher, the ALJ must consider a number of non-exhaustive factors that include the length and frequency of the teacher's involvement with the child, the consistency of the teacher's opinion with the other evidence, and the degree to which the source presents relevant evidence. *See Id.* at *4. It bears noting that the duration of a teacher's relationship with a child, while important, is not a dispositive factor. *Archer ex rel. J.J.P. v. Astrue*, 910 F. Supp. 2d 411, 423 (N.D.N.Y. 2012) ("[T]he duration of a teacher's relationship with a claimant, while important, is not dispositive."); *see also Spruill ex rel. J.T. v. Astrue*, No. 6:12-CV-6060 MAT, 2013 WL 885739, at *7 (W.D.N.Y. Mar. 8, 2013)("Information from school teachers cannot establish the existence of a medically determinable impairment."). Moreover, for the opinion of a teacher to be given significant weight, it must be consistent with the other evidence of the record. SSR 06-03p, at *4 (the length of time that a teacher has known the child and the consistency of the teacher's opinion with other evidence are factors that the ALJ must consider); *Cohn ex rel. R.Y. v. Astrue*, No. 10-CV-214, 2012 WL 1068824, at *3 (N.D.N.Y. Mar. 29, 2012) (school teacher's opinion regarding the child's functioning was not consistent to the other evidence of the record).

In the present case, it is undisputed that Phinney taught X.A. daily for seven months and was the only teacher, who assessed her functioning according to the six functioning domains.[3] AR.

---

[3] The record also contains progress notes submitted by another special education teacher, Gerald Ceregniho, however, the length and extend of his involvement with the child is unknown. AR. at 237. Also, he has not opined regarding X.A.'s level of functioning in the six domains.

6

at 247. Specifically, Phinney opined that X.A. had a "very serious problem" providing oral explanations and adequate descriptions, recalling and applying previously learned material, and applying problem-solving skills in class discussions. A.R. at 248. She also determined that X.A. had a "serious problem" learning new material, and an "obvious problem" understanding school and content vocabulary, reading and comprehending new material and math problems, and expressing ideas in written form. *Id.* Phinney further opined that the child was at a second-grade level in reading and math, and at a fourth-grade level in written language. A.R. at 247.

As someone who interacted with the child daily, Phinney's opinion was relevant to the ALJ's disability determination, however, the Court finds it was inconsistent with the other evidence contained in the record. In fact, contrary to Phinney's assessment, the record demonstrates that even though X.A. was assigned to a 15:1 special education class, and required small group setting, frequent redirection and refocusing, the child, nonetheless, was making consistent progress in reading, writing, and math. A.R. at 219-25, 237-44, 261-65. In fact, the record demonstrates that she was a good reader, tried very hard in reading, was able to write a five-sentence paragraph about the topic in an organized manner, and, overall, tried her best every day in the classroom. A.R. at 220, 264. X.A. was also very focused in math classes – she could add, subtract, and multiply, while working on fractions and ratios. *Id.* Both X.A.'s 2015 and 2016 IEP reports indicated that she was very helpful in the classroom, enjoyed her peers, participated during lessons, and was a "role model for others in the classroom." A.R. at 220-21, 264-65.

Progress reports submitted by Phinney and Gerald Cereghino demonstrated that at the end of her 2015-2016 school year, X.A. was making satisfactory progress and was expected to achieve her IEP goals in both reading and mathematics. A.R. at 240. Although she had made less than

satisfactory progress in writing due to not having been able to master writing three paragraphs, Cereghino, nonetheless, indicated that he believed X.A. could still achieve her writing goals. AR. at 239. Phinney also opined that X.A. worked very hard towards her goals by producing a writing sample inferencing a text she had read. AR. at 242. Additionally, X.A.'s 2015 Woodcock-Johnson IV Test of Achievement showed that she overall scored within average in the written expression category and within the high average range when she was asked to construct more detailed sentences. AR. at 369. These test results, along with Phinney's IEP progress reports, in which she indicated that X.A. could be very descriptive, clearly contradict her assessment of X.A. having "very serious problem" providing adequate description that plaintiff has greatly relied on in advancing her argument. AR. at 242; *see Cohn ex rel. R.Y. v. Astrue*, 2012 WL 1068824, at *3 (the teacher's opinion that the child had "serious" to "very serious problems" in several functional domains was inconsistent to test results and educational records showing average written language, spelling, and cognitive abilities, and the child's improvement in reading, writing and computation skills); *White o/b/o T.R.W. v. Berryhill*, 17-CV-6367P, 2019 WL 1367382, at *6 (W.D.N.Y. Mar. 26, 2019) (the ALJ properly concluded that the child did not have "marked" limitations in the acquiring and using information domain when the child was a "role model" at school, showed interest and performed well in his science class, had average to below average marks in his tests of achievement, and mild cognitive deficits); *Hudson ex rel. S.G. v. Astrue*, No. 1:06-CV-1342 (LEK/VEB), 2009 WL 1212114, at *7 (N.D.N.Y. Apr. 30, 2009) (substantial evidence supported the ALJ's determination that the child had less than marked ability to acquire and use information, notwithstanding the conclusion of the child's teacher that he had "serious" and "very serious" limitations in this domain).

The record also demonstrates that contrary to Phinney's opinion that X.A.'s reading and math levels were at a second-grade level, X.A. was able to read at the sixth-grade level, and could "use evidence from the 6th grade novel . . . to answer constructed response questions . . . ."[4] AR. at 238. Similarly, the X.A.'s January 2017 score card demonstrates that she was in the seventh grade English, science, social studies, and math classes, all subjects taught by Phinney, and worked to her ability in each of them. AR. at 232. Notably, the card also shows that her grades for these subjects ranged from a B to an A+. AR. at 232-33.

Additionally, X.A.'s hearing testimony supports the ALJ's determination that her limitations in this domain did not rise to the level of "marked". Specifically, X.A. testified that her favorite subject in school was reading and that she liked reading chapter books. AR. at 61. She used a laptop in school and had her own cell phone; knew how to tell time; buy candy for herself and get change back; rode a bicycle; played videogames and sports at school; walked alone to the corner of her street to catch a school bus; and was responsible for doing chores at home. AR. at 59-65.

Therefore, the Court finds that the ALJ's assignment of limited weight to the opinion of plaintiff's special education teacher and her overall determination that the child's limitations in the acquiring and using information domain were less than marked, was supported by the record.

b) <u>Attending and completing tasks domain</u>

The domain of attending and completing tasks encompasses a child's ability to focus and maintain attention; begin, carry through, and finish activities; initiate and maintain concentration; filter out distractions; and remain focused on an activity or task at a consistent level of

---

[4] The child's grandmother testified that X.A. was reading at a third grade level (AR. at 66), however, for the same reasons as with Phinney's opinion, such testimony is not supported by the record.

9

performance. 20 C.R.F. 416.926a(h). A school-age child should be able to focus attention to follow directions; remember and organize school materials; complete classroom and homework assignments; concentrate on details and not make careless mistakes in homework beyond what is expected; change activities without being distracted; sustain attention well enough to participate in group sports; read; complete family chores; and complete transition tasks, such as getting ready for the school bus, change clothes after the gym, or change of classrooms without extra reminders and accommodation. *Id.* The regulations provide that adolescents should be able to pay attention to longer presentations; maintain concentration while reading textbooks; keep attention on a task for extended periods of time; independently plan and complete long-range academic projects; and not distract their peers or be unduly distracted by them in school. 20 C.R.F. 416.926a (h)(2)(v). The regulations identify examples of limited functioning in this domain, which include a child's failure to complete activities, such as games or art projects; distractibility or overreaction to sounds, sights, movement, or touch; frequent interruption of others; or the need for extra supervision to keep the child engaged in an activity. 20 C.F.R. 416.926a(h)(3).

Similarly to the acquiring and using information domain, plaintiff argues that the ALJ erred in crediting the opinion of Katherine Phinney, who indicated that X.A. has a "very serious problem" in completing work accurately without making careless mistakes and an "obvious problem" focusing long enough to finish assigned activity or task. Pl.'s Br. at 12; AR. at 249. Phinney also opined that the child had a "slight problem" paying attention when spoken to directly, sustaining activity during play/sports activities, refocusing to task, carrying out multi-step instructions, changing from one activity to another, working without distracting herself or others, and finishing assignments on time. AR. at 249. Analyzing the child's limitations in this domain,

the ALJ found that X.A. had "less than marked" limitations (AR. at 27), and the Court does not see any reason to disturb this conclusion now.

First, the record is void of any medical opinion asserting that X.A. was suffering from marked limitations in this domain. Instead, it is replete of evidence demonstrating that she was capable of focusing her attention on a particular task and sustaining it well-enough to participate in group sports, and in activities that typically required her sole participation. As previously discussed, X.A. she liked to read, and often brought books from the library to read at home. AR. at 220. She also liked coloring, journaling, playing outside and on the computer. AR. at 246. Treatment notes from X.A.'s pediatrician demonstrate that during pendency of this action, she attended cheerleading and weekly ballet classes, and at some point, was a member of the drill team. AR. at 285, 296, 374. While at school, X.A. was very helpful in the classroom, and, when at home, assisted with household choirs, was able to dress, bathe and groom herself, and travel independently in the neighborhood. AR. at 220-21, 285.

These notes are corroborated by the intelligence evaluation completed by Dr. Santarpia, state consultative examiner, who determined that X.A. was able to attend to, follow, and understand age-appropriate directions and instructions, complete age-appropriate tasks, maintain appropriate social behavior, and adequately interact with peers and adults. AR. at 327-28. She also opined that plaintiff's working memory fell within the average range of ability. AR. at 327. Similarly, state agency psychologist Dr. Fabiano noted that X.A. had friends, was able to assist in household choirs, could dress, bathe, groom herself, and travel independently in her neighborhood. AR. at 351-52. Even though he determined that the child's attention and concertation skills were impaired based on her making a careless mistake in a simple calculation during his examination, this finding, at most, is indicative of plaintiff's limitation in this domain, which does not rise to the

11

level of a "marked" limitation. *See* 20 C.F.R. § 416.926a(e)(2)(i); *Grant v. Colvin*, No. 12-CV-962(MAT), 2015 WL 3746707, at *7 (W.D.N.Y. June 15, 2015) ("While there is some evidence of [the child's] distractibility, which the ALJ properly considered, the balance of the record shows that the ALJ relied on substantial evidence when he found a less than marked limitation in this domain."). Notably, Dr. Fabiano's other findings support the ALJ's conclusion regarding the child's functioning in this domain. Specifically, he determined that plaintiff had only mild to moderate limitations in her ability to complete age-appropriate tasks, and follow and understand age-appropriate directions, which were not significant enough to interfere with her ability to function on a daily basis. AR. at 351-52. He also opined that X.A. did not have any limitations in her ability to respond appropriately to changes in the environment, learn in accordance to her cognitive functioning, ask questions and request assistance in an age-appropriate manner, and adequately interact with her peers. *Id.*; *see also Marshall o/b/o "A.M.H." v. Berryhill*, No. 16-CV-000174V(F), 2018 WL 3215648, at *7 (W.D.N.Y. Apr. 3, 2018), *report and recommendation adopted sub nom. Marshall on behalf of A.M.H. v. Comm'r of Soc. Sec. Admin.*, 16-CV-174, 2018 WL 3209191 (W.D.N.Y. June 29, 2018) (the child's limitations did not rise to the level of "marked" limitations when the child did not having problems sustaining attention during play, waiting to take turns, changing from one activity to another, and organizing school materials, but had slight problems refocusing when necessary, carrying out single-step instructions and completing work without careless mistakes); *White o/b/o T.R.W. v. Berryhill*, 2019 WL 1367382, at *7 (the child did not have "marked" limitations in the attending and completing tasks domain when the child showed improvement and stayed after school to receive extra help and when the treating pediatrician did not diagnose him with ADHD, even though the record contained evidence

suggesting that the child needed a lot of prompting to complete tasks, had trouble motivating himself and did not complete homework as much as he should have).

Moreover, assuming hypothetically that the ALJ erred in determining plaintiff's limitation in this domain, which she did not, such error would not change the outcome of the ALJ's decision because plaintiff did not suffer marked limitations in any of the remaining domains. *Lindner ex rel. N.M.R. v. Colvin*, No. 1:13-CV-01058(MAT), 2015 WL 5156877, at *7 (W.D.N.Y. Sept. 2, 2015) (even if the ALJ erred in finding no limitations, the error was harmless because plaintiff did not suffer from a marked limitation in any of the remaining domains).

### c) Structured Setting

Plaintiff also argues that the ALJ failed to consider the effects of a structured setting in her assessment of X.A.'s functioning. Pl.'s Br. at 11. She is correct that the regulations require an ALJ to consider "the effects of structured or supporting settings" in evaluating the effects of impairments on a child's functioning. 20 C.F.R. § 416.924a(b)(5). Even if a child functions well in a structured or supported setting, the ALJ is required to consider how the child would function in other settings, and determine whether the child would continue functioning at an adequate level outside the structured or supportive setting. 20 C.F.R. §416.924a (b)(5)(iv)(C) and (E). However, while the ALJ must consider the child's functioning in and outside of a structured setting, the regulations do not require the ALJ to explicitly discuss such consideration in the decision. *Shatraw ex rel. K.C.Y. v. Astrue*, No. 7:11-cv-13(GLS), 2012 WL 589667, at *4 (N.D.N.Y. Feb. 22, 2012) (internal citation omitted) (the ALJ properly considered the structured setting without explicitly referencing it in his decision when he assessed reports of the child's general and special education teachers, along with the child's testimony regarding his functioning at home).

The record here clearly demonstrates that the ALJ gave careful consideration to the entire record determining the level of the child's functioning in and outside of the structured environment X.A. was in. It is undisputed that plaintiff was in a 15:1 self-contained special education classroom, however, consideration of this fact alone does not warrant a finding of a marked limitation. *Grant v. Colvin*, No. 12-CV-962 MAT, 2015 WL 3746707, at *6 (W.D.N.Y. June 15, 2015) ("The fact that Plaintiff was classified as special education does not, standing alone, warrant a finding of a marked limitation."). Contrary to plaintiff's assertions, the ALJ thoroughly reviewed the child's performance in school, and discussed X.A.'s hobbies, her participation in an after-school program and extracurricular activities that she was involved in outside of the school setting and at home. A.R. at 20, 23-25, 27-29; *see Watson ex rel. K.L.W. v. Astrue*, No. 07-CV-6417T, 2008 WL 3200240, at *5 (W.D.N.Y. Aug. 5, 2008) (the ALJ properly considered plaintiff's functioning both in and outside of structured setting by analyzing medical, non-medical, and educational evidence, including how she interacted with other children during unstructured periods of recreation and play). The ALJ also considered X.A.'s medical and educational records in making her determination that they do not support a finding of the child's "marked" limitations in any of the functional domains. *See Petrie ex rel. T.T. v. Colvin*, No. 7:12-cv-522(GLS), 2013 WL 1500360, at *7 (N.D.N.Y. Apr. 11, 2013) (the ALJ considered the effects of a structured educational setting when he discussed the child receiving help from his aids in school, seating arrangements on the school bus and at lunch, and assessed the reports of the child's teachers, doctors, school counselor and psychologist); *Johnson ex rel. A.J. v. Astrue*, No. 11 Civ. 5247(JMF), 2013 WL 1187436, at *15 (S.D.N.Y. Mar. 22, 2013) (the ALJ considered the effects of the child's structured setting when he reviewed evidence of the child's functioning outside the classroom, including her behavior at home, social history, and evaluations by physicians outside

the classroom setting). Therefore, consistent with the regulations, the Court finds that the ALJ considered educational accommodations provided to X.A. when she ultimately determined that the child suffered from less than marked limitations in the six functional domains.

### d) Listing 102.10: Hearing Loss Not Treated with Cochlear Implantation

The regulations provide that in order to meet the requirements of Listing 102.10, a child must have "[a]n average air conduction hearing threshold of 50 decibels or greater in the better ear and a marked limitation in speech or language." *See* 20 C.F.R. Pt. 404, Subpt. P., App.1, § 102.10(B)(3).[5]

The record is clear that X.A.'s difficulties with her hearing were first noted in 2012 when her family started noticing her not responding to her name being called, asking to repeat what was said, watching television at a loud volume, and not following oral directions.[6] AR. at 256, 315. In April 2012, two years prior to the application date, the child underwent a speech-language evaluation, during which it was determined that she had moderate limitations in receptive language skills and severe deficits in expressive language. *Id.* at 256-58. Plaintiff greatly relies on these results of the evaluation, along with the opinion of Dr. Ulatowski, to advance her argument that X.A. has met the Listing, however, the Court finds that such reliance is misplaced for several reasons.

---

[5] The regulations describe a child as having a "marked" limitation in speech if:
> (i) Entire phrases or sentences in [the child's] conversation are intelligible to unfamiliar listeners at least 50 percent (half) of the time but no more than 67 percent (two-thirds) of the time on [the child's] first attempt; and (ii) [the child's] sound production or phonological patterns (the ways in which [the child] combine[s] speech sounds) are atypical for [the child's] age.

20 C.F.R. Part 404, Suppart P, App'x 1, Sec. 102.00(B)(5)(a). A "marked" limitation in language is present when the child's current and valid test score on an appropriate comprehensive, standardized test of overall language functioning is at least two standard deviations below the mean. *Id.*, § 102.00(B)(5)(b).

[6] There are notes suggesting that X.A.'s hearing loss was first suspected by her family in 2013 (AR. at 315), however, the speech-language evaluation dated April 5, 2012, suggests that the child started exhibiting first signs of hearing loss in 2012.

15

First, at the time of the April 2012 speech evaluation, X.A.'s prognosis to achieve age-appropriate speech sound production, receptive and expressive language skills was deemed good. AR. at 260. She was recommended to undergo speech therapy several times per week and continue with speech and language services she was receiving through her school district. *Id.* The record demonstrates that she, did, in fact, undergo speech therapy from 2013 until February 2014, when it was recommended that therapy be discontinued because X.A. was making a consistent progress in syntactic, critical thinking, vocabulary skills, and ability to accurately follow directions. AR. at 262-65, 275.

As to her hearing, in July 2014, X.A. underwent an audiological evaluation, which revealed "normal hearing sloping to moderately severe sensorineural hearing loss." AR. at 315. X.A's speech recognition thresholds were in agreement with pure tone average, and her word recognition ability was either excellent in the right ear and good in the left ear. AR. at 315, 365-66. As a result, the child was prescribed hearing aids, which she started wearing shortly after the evaluation and has worn continuously during pendency of this action. AR. at 322, 357-58, 365-66. Aside from initially having issues with getting used to wearing and taking care of the hearing aids, they have significantly improved her hearing to the point she was able to hear her classmates' whisper. AR. at 358. In fact, the results of the child's subsequent audiological evaluations were similar to the July 2014 evaluation, and demonstrated that her hearing was "borderline normal hearing sloping to moderately severe sensorineural hearing loss rising to hearing within normal limits."[7] AR. at 365.

---

[7] The December 5, 2014 evaluation revealed mild to moderate sensorineural hearing loss rising to hearing within normal limits, while the November 2015 evaluation results were similar to the July 2014 results that revealed normal hearing sloping to moderately severe hearing loss rising to hearing within normal limits bilaterally. AR. at 365-66.

As for the October 1, 2015 opinion of Dr. Ulatowski that plaintiff greatly relies on, the Court concludes that this opinion alone is incomplete and does not support plaintiff's argument that X.A.'s hearing loss met or was equal the severity requirement of the Listing. Indeed, at that time, Dr. Ulatowski opined that X.A. has met the average air conduction hearing threshold criteria, however, she did not opine regarding plaintiff's speech-language abilities, which are required to be "marked" to meet the second prong of the Listing. (AR. at 356). Instead, she recommended that X.A. undergo a comprehensive speech-language evaluation to determine if she had, in fact, met the Listing. *Id.* No such evaluation was conducted following her opinion, however, the Court does not find this to be problematic because the child's hearing loss appeared to stabilize after she had started wearing hearing aids. In fact, the results of the audiological evaluation conducted by Dr. Ulatowski a month later, in November 2015, revealed that X.A.'s hearing threshold was 40 decibels in her left ear and 45 decibels in her right ear. AR. at 365. At that time, X.A. had normal middle year function in both ears; her word reception ability was good in both ears, and her speech reception thresholds were in agreement with pure tone averages. *Id.* Additionally, the child's hearing loss continued to remain stable through 2016 and 2017, which is evidenced by the February 17, 2017 audiological evaluation by Dr. Ulatowski, who determined that the child did not meet the average air conduction hearing threshold required by the Listing because her threshold value was 45 decibels in the better ear. AR. at 367. Even though Dr. Ulatowski noted that a slight insignificant shift in thresholds could affect the pure tone air conduction average, she, nonetheless, opined that the child's hearing loss was stable in both ears. *Id.*

Therefore, because the record does not contain evidence that demonstrate that plaintiff's hearing loss met the average air conduction threshold of 50 decibels or greater in the better ear, and evidence showing that plaintiff was diagnosed with a "marked" limitation in speech or

language, the ALJ's determination that plaintiff's symptoms did not meet or medically equal the Listing was supported by substantial evidence.

## Conclusion

For the foregoing reasons, the Commissioner's motion on judgment on the pleadings (ECF No. 25) shall be **granted**, and plaintiff's motion for judgment on the pleadings (ECF No. 18) shall be **denied**. The complaint is dismissed in its entirety with prejudice. The Clerk of Court is directed to enter judgment and close the case.

IT IS SO ORDERED.

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

Dated: July 31, 2019
Rochester, New York